482 N.E.2d 306 (1985)
In the matter of M.R.D., a Child Alleged to Be a Delinquent Child, State of Indiana, Petitioner-Appellant,
v.
M.R.D., Respondent-Appellee.
No. 2-485A105[1].
Court of Appeals of Indiana, First District.
August 29, 1985.
Rehearing Denied October 7, 1985.
*307 Linley E. Pearson, Atty. Gen., Michael Gene Worden, Deputy Atty. Gen., Indianapolis, for petitioner-appellant.
S. Daniel Weldy, III, Gallivan, Hamilton, Hamilton, Seese & Patterson, Bluffton, for respondent-appellee.
RATLIFF, Presiding Judge.

STATEMENT OF THE CASE
The State appeals from the judgment of the Wells Circuit Court granting M.D.'s Motion to Suppress. We reverse and remand.

FACTS
On July 27, 1984, an Affidavit for Search Warrant was filed in the Wells County Court. The affidavit stated, in relevant part, that:
"[Affiant] has good cause to believe that several individuals, under the age of twenty-one (21) years, are in possession or are consuming alcoholic beverages within the residence of David A. Willits, located at 3676E, 500S, Bluffton, Indiana.
"In support of said belief, your affiant states that on the 27th day of July, 1984, your affiant received a telephone call from a Mrs. Myers of Wells County, Indiana, indicating that her daughter had been invited to a party at the aforementioned residence in which alcoholic beverages were to be served to individuals under the age of twenty-one (21) years. Based upon this information, your affiant went to the Willits residence at approximately 9:00 p.m. and observed numerous vehicles in the driveway of the Willits residence and in the surrounding area. Your affiant's observations indicated to him that there was, indeed, a sizeable party going on at the Willits residence, which corroborates the information provided to him earlier by Mrs. Myers.
"Wherefore, based upon the above information, your affiant requests that a search warrant issue allowing him to enter the premises of David A. Willits, located at 3676E, 500S, and thereupon search for alcoholic beverages."
Record at 18. Based on the affidavit, the Wells County Court issued the following search warrant:
"You are authorized and ordered, in the name of the State of Indiana, with *308 the necessary and proper assistance to enter into or upon the residence located at 3676E, 500S, Bluffton, Indiana, and there diligently search for alcoholic beverages, controlled substances and individuals using said alcohol or controlled substances in an illegal manner. You ar[e] ordered to seize such property, or any part thereof, found on such search.
"Dated this 27th day of July, 1984, at the hour of 9:30 P.M.
 /s/ Everett E. Goshorn
 Everett E. Goshorn, Judge"
Record at 19. Later that same evening, the warrant was executed. As a result of the ensuing search, a delinquency petition was filed in the Wells Circuit Court charging M.D. with possession of an alcoholic beverage while under the age of twenty-one.
On December 3, 1984, M.D. filed a Motion to Suppress. She asserted that the affidavit failed to establish probable cause rendering the search warrant invalid. The trial court subsequently granted M.D.'s motion and suppressed all evidence seized pursuant to the challenged warrant. Because the trial court's ruling effectively prevents further prosecution of the delinquency petition, the State perfected this appeal.

ISSUES
The State raises three issues for our consideration:
1. Whether M.D. lacks standing to challenge the constitutionality of the search.
2. Whether the affidavit, upon which issuance of the search warrant was based, sufficiently established the existence of probable cause.
3. Whether the "good faith" exception to the exclusionary rule applies in this case.

DISCUSSION AND DECISION

Issue One
The initial question in all cases implicating the Fourth Amendment is whether the aggrieved individual had any personal and legitimate expectation of privacy in the place searched. Johnson v. State (1985), Ind., 472 N.E.2d 892, 898; Burris v. State (1984), Ind., 465 N.E.2d 171, 182; Humes v. State (1981), Ind., 426 N.E.2d 379, 381. Clearly, the search M.D. challenges here was conducted at the residence of another. Consequently, she lacked standing to challenge the constitutionality of that search. Johnson, at 898; Burris, at 182; Smith v. State, (1984), Ind., 465 N.E.2d 1105, 1123; Hope v. State (1982), Ind., 438 N.E.2d 273; Humes, at 381.
The State has failed, however, to preserve any error in this regard. Its Motion to Correct Errors is devoid of any alleged error in the trial court's ruling on M.D.'s standing to challenge the search. Therefore, any error is deemed waived. Thacker v. State (1985), Ind. App., 477 N.E.2d 921, 924; Brunes v. State (1985), Ind. App., 475 N.E.2d 356, 358; Pirtle v. State (1983), Ind., 452 N.E.2d 968, 969.

Issue Two
The State next asserts that the trial court erred when it determined that the Affidavit for Search Warrant failed to establish probable cause. In the present case, the affidavit was based almost exclusively on hearsay. Consequently, there must be strict compliance with the statutory requirements.[2]Madden v. State (1975), 263 Ind. 223, 224, 328 N.E.2d 727, 728; Nash v. State (1982), Ind. App., 433 N.E.2d 807, 809; Mills v. State (1978), 177 Ind. App. 432, 434, 379 N.E.2d 1023, 1026.
At the time the search warrant challenged here was issued, the statute in effect *309 was Indiana Code section 35-33-5-2 (1982).[3] That provision stated in relevant part: "When based on hearsay, the affidavit shall contain reliable information establishing the credibility of the source and of each of the declarants of the hearsay and establishing that there is a factual basis for the information furnished." This was essentially a codification of the two-prong Aguilar/Spinelli analysis.[4]See Spinelli v. United States (1969), 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637; Aguilar v. State of Texas (1964), 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723. We must determine then whether the affidavit contained sufficient information to satisfy both the veracity and basis of knowledge prongs of this analysis.
Clearly, the affidavit contains no information bearing directly either on the hearsay declarant's veracity or on her basis of knowledge. The affidavit identifies the informant only as "... a Mrs. Myers of Wells County, Indiana... ." It contains no information which would permit us to determine who "Mrs. Myers" is or what credibility she might have had. See Baker v. State (1983), Ind., 449 N.E.2d 1085, 1091; Pawloski v. State (1978), 269 Ind. 350, 354, 380 N.E.2d 1230, 1232 (discussing distinction between differing types of informants). In addition, the warrant is devoid of any of the facts upon which "Mrs. Myers" based her conclusion that alcohol would be served to minors at the David Willits residence during the evening of July 27, 1984. The issuing magistrate could not, therefore, examine the underlying facts to make an independent determination of probable cause. Rather, he necessarily had to rely on the conclusory statement of "Mrs. Myers". This, he could not do. Short v. State (1982), Ind., 443 N.E.2d 298, 303 (probable cause determination must be based on facts and not on mere conclusions of affiant or witness); see also Ruth v. State (1984), Ind. App., 462 N.E.2d 269, 272, trans. denied; Flaherty v. State (1982), Ind. App., 443 N.E.2d 340, 342, trans. denied.
The State next asserts that any deficiency was cured by the affiant's independent verification of "Mrs. Myers'" tip. That corroboration consisted of the affiant's statement that he drove past the Willits residence at 9:00 p.m. on July 27, 1984, and observed numerous vehicles both in the Willits driveway and in the surrounding area. This observation of innocent activity was wholly insufficient to permit judicial reliance on the hearsay declarant's tip.
As the Maryland Court of Special Appeals pointed out in Stanley v. State (1974), 19 Md. App. 507, 508, 313 A.2d 847, under the Aguilar/Spinelli analysis, independent verification bears only on the veracity prong. Id., at 529, 313 A.2d at 860. Judge Moylan, speaking for the Maryland court, stated this proposition most eloquently in Stanley:
"The `basis of knowledge' test is not concerned one whit with an informant's honesty or `veracity.' It is concerned, rather, with conclusionary validity. Even assuming `credibility' amounting to sainthood, the judge still may not accept the bare conclusion of that `credible' informant anymore than he may accept the bare conclusion of a sworn and known and trusted police-affiant. Nathanson v. United States, 290 U.S. 41, 54 S.Ct. 11, 78 L.Ed. 159 (1933); Giordenello v. United States, 357 U.S. 480, 78 S.Ct. 1245, 2 L.Ed.2d 1503 (1958). To do so would be an unconstitutional delegation of the decision-making function which the Fourth Amendment lodges exclusively in the judge himself.
"The `basis of knowledge' prong assumes an informant's `veracity,' and then proceeds to probe and test his conclusion: (`What are the raw facts upon which the informant based his conclusion?' `How did the informant obtain those facts?' `What precisely did he see or hear or *310 smell or touch firsthand?' `If he heard the facts from someone else, what makes that third person "credible" and how did that third person come by the knowledge?'). The judge must ascertain the source for the raw data  the product of someone's senses  and then weigh that data for himself. He is concerned not with that part of an affidavit or testimony which provides information about the informant but with the recitation of the story coming from the informant." (Emphasis in original) (footnotes omitted).
Id., at 530-31, 313 A.2d at 861. Thus, even if we were willing to assume that the corroboration of one innocent detail were sufficient to establish "Mrs. Myers'" veracity, there remains a complete void of information bearing on the basis of knowledge prong. This was a fatal flaw in the affidavit. Thus, we must conclude that the trial court properly determined that the affidavit, based primarily on "Mrs. Myers'" tip, failed to satisfy the statutory requirements.

Issue Three
The State raises one final argument. It asserts that, even if the trial court correctly determined that the affidavit was insufficient, under the doctrine announced in United States v. Leon (1984), 468 U.S. ___, 104 S.Ct. 3405, 82 L.Ed.2d 677; Massachusetts v. Sheppard (1984), 468 U.S. ___, 104 S.Ct. 3424, 82 L.Ed.2d 737, suppression of the evidence seized during the unconstitutional search was an improvident remedy. In this case, we must agree with the State.
The Fourth Amendment exclusionary rule was modified in Leon to permit the use, in the prosecutor's case-in-chief, of evidence seized in good faith reliance on a search warrant issued by a detached and neutral magistrate but ultimately found to be unsupported by probable cause. Leon, 468 U.S. at ___, 104 S.Ct. at 3423, 82 L.Ed.2d at 701. Justice White, writing for the Leon majority, pointed out however that exclusion remains appropriate where:
1. the issuing magistrate was misled by information in the affidavit that the affiant knew or should have known was false;
2. the magistrate wholly abandoned his judicial role and failed to perform in a neutral and detached fashion;
3. the affidavit on which the warrant is based is "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable";
4. the warrant is so facially deficient (by failing to particularily describe the place to be searched or the items to be seized) that it could not be reasonably relied upon by the executing officers.
Leon, at ___, 104 S.Ct. at 3421-22, 82 L.Ed.2d at 698-99. Only the third exception is potentially applicable in these circumstances.
Here, while the trial court properly held that the affidavit failed to support a finding of probable cause, we cannot say that the affidavit was so insufficient that it could not be reasonably relied upon. The hearsay information clearly failed to meet the technical requirements of the statute then in effect. It would be reasonable to assume, however, that the executing officer believed he had received a valid tip from a concerned mother. Certainly, even his minimal independent verification buttressed that belief. In addition, it is important to note that the issuing magistrate found the affidavit sufficient. When this is considered in light of the fact that Illinois v. Gates had been decided only little more than a year before the probable cause determination was made in this case, we cannot say that a reasonably well trained officer could not have, in good faith, relied upon the challenged warrant. Although we by no means condone the executing officer's actions, the remedy of suppression was inappropriate here.
The judgment of the trial court is, therefore, reversed and this case is remanded for further proceedings consistent with this opinion.
NEAL and ROBERTSON, JJ., concur.
NOTES
[1] This case was diverted from the Second District to the First District by order of the Chief Judge.
[2] In both Clifford v. State (1985), Ind., 474 N.E.2d 963, and Johnson v. State (1985), Ind., 472 N.E.2d 892, our supreme court applied the "totality of the circumstances" test first enunciated in Illinois v. Gates (1983), 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527, despite the fact that the search warrants challenged in those cases were issued before the Gates decision was announced. However, the applicability of the statutory requirements embodied in Indiana law appears not to have been asserted in those cases.
[3] The State urges that the Gates "totality of the circumstances" test be applied in this case. Probable cause was determined, however, under the 1982 version of IC XX-XX-X-X. Consequently, that is the standard to which we look for guidance.
[4] On September 1, 1984, IC XX-XX-X-X was amended to reflect the changes brought about by Illinois v. Gates.